(No. 54136.—

ELGIN AIRPORT INN, INC., Appellee, v. COMMON-
WEALTH EDISON COMPANY, Appellant.

*Opinion filed February 19, 1982.*

MORAN, J., concurring in the judgment.

Puckett, Barnett, Larson, Mickey, Wilson & Ochsen-schlager, of Aurora (Richard J. Larson, Peter K. Wilson, Jr., and Bernard K. Weiler, of counsel), for appellant.

Brady, McQueen, Martin, Collins & Jensen, of Elgin (Wiley W. Edmondson and Alfred Y. Kirkland, Jr., of counsel), for appellee.

James H. Eddleman, of Springfield, and William T. Crisp, of Crisp, Smith, Davis & Schwentker, of Raleigh, North Carolina, for *amici curiae* Association of Illinois Electric Cooperatives and National Rural Electric Cooperative Association.

JUSTICE SIMON delivered the opinion of the court:

The defendant, Commonwealth Edison, a regulated utility, supplied electricity to the plaintiff, Elgin Airport Inn, a motel. In particular, it supplied "three-phase" current, which the Inn needed for certain air-conditioning motors designed to run on that type of current. On November 3, 1976, a casting in a switching mechanism in Edison's line broke, and one of the phases was cut off, a mishap known as "single phasing." The resulting abnormal current is unsuitable for three-phase motors. After about five minutes on the abnormal current, the Inn's motors overheated and burned. The smoke drove everyone out of the Inn; no one, however, was injured, and the damage to the motors amounted to less than $5,000. The Inn sued, under theories of negligence, *res ipsa loquitur,* strict tort liability, and violation of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 32). The circuit court of Kane County, after trial, ruled for the defendant on all counts. The appellate court affirmed on the negligence, *res ipsa,* and statutory counts, but reversed on the issue of strict product liability in

tort, holding that Edison was liable as a matter of law, and remanding for ascertainment of damages. (88 Ill. App. 3d 477.) We granted Edison leave to appeal, and, adopting the circuit court's conclusion that the electricity, even if dangerous, was not unreasonably so, we now reverse the appellate court on the strict liability count.

The evidence supports the circuit court's finding that Edison did nothing wrong. Unlike an ordinary product, which can be made and inspected at the maker's convenience, electricity must be always ready, at the flip of the user's switch. The supplier cannot possibly inspect all its miles of wire constantly to be sure that every ampere is perfect; the casting that failed here was not visible to the naked eye, and any defect in it could not be discovered unless the switching mechanism was disassembled and examined. Edison followed its normal inspection procedures, and the Inn does not suggest how those procedures could have been improved. Single phasing seems to be simply one of those things that happen occasionally; there is nothing Edison or anyone else could have done to prevent it or detect it immediately, and nothing Edison could have done to reduce the danger the abnormal current would pose to the Inn's motors should it occur. The judgments for Edison on the negligence and *res ipsa* counts must therefore be affirmed. We also agree with the lower courts' conclusion that the Inn's claim under the Public Utilities Act is meritless. That brings us to the main issue of this appeal, strict liability.

The lack of any feasible way for Edison to prevent occasional intervals of defective current or reduce the danger of such current would not by itself insulate Edison from strict tort liability for a defective product. (*Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443.) This case, however, goes a step further. The danger of abnormal current *can* be reduced, by the user. Single phasing is a common enough phenomenon that the national

electrical code, which Edison's tariffs required the Inn to comply with, provides that appliances are to be equipped with suitable protective devices. The Inn's air-conditioning units included a device supposedly designed to protect the motors in case of power failure or abnormality, such as single phasing. The device, however, failed to prevent the damage. The reason for the failure is not clear, because the record is incompletely developed on this point, as it is on many technical facets of this case. As the plaintiff had the burden of proof and lost in the circuit court, we shall assume that the failure was attributable to some defect in the protective device; there is evidence to support that hypothesis. At any rate, there is no evidence that Edison knew or should have anticipated that the device would fail.

In these circumstances, even if Edison knew that its current had single phased, to cut off that current entirely might not be the appropriate response. The defective current, while harmful to certain peculiarly sensitive appliances, namely three-phase motors—which are equipped with devices to protect against that harm—would not necessarily be unsafe or unsuitable for all other utilizations. Cutting it off in Edison's main line would protect the Inn's motors, but it could also indiscriminately black out other utilizations (and other customers along the line) for which the abnormal current supply might be, if not ideal, at least useable. The system of cutting off the abnormal current only in the sensitive appliances themselves, by means of a protective device incorporated in the appliance, seems eminently reasonable. Thus, even if Edison had known its current was abnormal, continuing to supply it (until normal current could be substituted) would not necessarily have been improper. Edison might reasonably have chosen simply to warn the Inn of the situation so that the Inn could check on its motors or take other appropriate action. Indeed, the main thrust of the Inn's argument that Edison was negligent is not that the abnormality occurred but that

Edison failed to warn the Inn for over five minutes. (The danger to the motors increases as they continue to draw the abnormal current.) And because Edison did not know and could not sooner discover that its current was abnormal, it is not strictly liable for a failure to warn of the danger. *Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26.

The contract between Edison and the Inn provided:

"Continuous service. The company shall not be responsible in damages for any failure to supply electricity or for interruption or reversal of the supply, if such failure, interruption, or reversal is without wilful default or negligence on its part."

Whether this provision directly exculpates Edison from liability for single phasing is not entirely clear, but it does allow Edison to cut off the current entirely with impunity. As we have explained, the Inn has not proved, and we cannot say as a matter of law, that single phasing is, on the whole, inferior to no current at all. Since Edison could do nothing to avoid being forced to the choice, it seems unfair to hold Edison strictly liable for adopting the superior alternative while absolving it from liability had it followed the inferior course of completely shutting off electricity. And Edison should not be strictly liable for unknowingly and unavoidably transmitting current that it could properly have transmitted knowingly and intentionally, under the circumstances.

It appears that, for the foreseeable future, the technological possibilities for keeping appliances from being ruined by single phasing will lie with the appliances rather than with the current. Moreover, Edison cannot, either practically or legally, control the details of what appliances with what protective devices its customers are plugging in, or vary its rates accordingly; it can only insist on compliance with general standards like the national electrical code, which will inevitably lag behind the state of the art. Only the Inn here could, by selection of a less fragile motor or a

more dependable protective device, have prevented the loss; Edison could do nothing. Legally transferring losses from those who could prevent them to those who cannot will not improve safety. In *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, this court held that the seller of a used car was not strictly liable for its defects, partially because liability would not serve the policy of inducing manufacturers to make safer cars. That reasoning seems far stronger here, where the effects of liability might be not merely nonexistent but perverse.

Neither is the policy of spreading losses particularly compelling here. The loss is not purely a feature of Edison's business of making electricity; it is at least as plausibly a problem of the motors. Edison did not create the risk single-handed; the danger here varies immensely from one user to another and is largely under the users' control. Product liability as a type of built-in insurance, with the premiums incorporated into the price of the electricity, seems both unfair to those users who do not have valuable, fragile, inadequately protected appliances, but must pay for the dangers of those who do, and unnecessarily expensive in the long run if more motors burn out because those who can protect and save them have no financial incentive to do so. If the Inn wanted insurance, it could have bought its own, probably at lower and more accurate rates than Edison could provide.

We conclude that while the current was defective, in the sense that it was not as Edison designed it, and was no doubt dangerous (beyond the ordinary dangers of electricity) to certain appliances, the circuit court's finding that it was not *unreasonably* dangerous is not against the manifest weight of the evidence. Edison could do nothing to prevent occasional single phasing of its current; the risk of single phasing and the danger single phasing would present to three-phase motors were well known in the electrical trade; the danger could best be minimized by the user, and the

Inn, as required, had taken precautions, which proved, unfortunately, not to be infallible; given those precautions, the danger was not great; Edison, trying to provide continuous electricity at the user's whim, could reasonably suppose that, for a short while at least, even abnormal current was better than none.

Because Edison would be strictly liable in tort for a defective product only if the defect made the product unreasonably dangerous (*Dubin v. Michael Reese Hospital & Medical Center* (1980), 83 Ill. 2d 277; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612; Restatement (Second) of Torts sec. 402A (1965)), there is no need to consider the more fundamental questions Edison raises, such as whether electricity is a product at all, and whether a regulated utility can be strictly liable in tort.

The circuit court was correct to enter judgment for Edison on all four counts; the appellate court erred in reversing as to the strict liability count.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*

JUSTICE MORAN concurs in the judgment.