ERNEST PHILLIPS, Plaintiff-Appellant, v. UNITED STATES WACO CORPORATION, Defendant-Appellee.

First District (1st Division)   No. 86—3139

Opinion filed November 9, 1987.—Rehearing denied December 9, 1987.

Raymond P. Concannon, Ltd., of Chicago (Raymond P. Concannon and Michael P. Concannon, of counsel), for appellant.

Lurie, Sklar & Simon, Ltd., of Chicago (Brad L. Jansen, of counsel), for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, Ernest Phillips, filed suit in a two-count complaint in the circuit court of Cook County against the defendant, United States Waco Corporation (Waco), to recover money damages for personal injuries sustained when he fell from a scaffold manufactured by the defendant. Thereafter, the defendant filed a motion for summary judgment on both counts I and II of the plaintiff's fourth amended complaint. After hearing arguments of counsel, the circuit court granted the motion and entered summary judgment in favor of Waco. The plaintiff appealed.

We affirm.

In the fourth amended complaint, the plaintiff alleged in count I that Waco was negligent and that its negligence was the proximate cause of his injuries. He specifically alleged that the defendant was negligent in the following ways: by failing to equip the scaffold with cross braces to prevent "racking," by failing to adequately inspect and test the scaffold before selling it, by failing to equip the scaffold with cleats or other devices, and by failing to affix a label warning users about the danger of "racking." The plaintiff alleged in count II that the scaffold was unreasonably dangerous when it left the defendant's control because it lacked these cross braces, cleats and an adequate warning label.

The evidence concerning the plaintiff's accident was presented to the court through deposition testimony, an affidavit and several exhibits. The plaintiff, Ernest Phillips, testified during his discovery deposition that he was employed as a laborer by the Turner Construction Company at the time of the accident. On the day of the accident, August 4, 1980, the plaintiff was working for Turner at the Burlington Northern Building located at Clinton and Jackson in Chicago, Illinois. He stated that, on that day, he was working with a man he knew as Slim. The plaintiff said that he and Slim were taking turns cutting light fixtures from the ceiling with an acetylene torch while standing on a scaffold. According to the plaintiff, one would stand on the scaffold and cut the fixtures and the other would move the scaffold. Phillips further testified he did not notice anything wrong with the scaffold before he got onto it that day. Phillips and Slim used the scaffold all day prior to plaintiff's fall. Sometime between 3 and 3:30 p.m., the plaintiff stated that he was working atop the scaffold, which

was approximately five feet above the ground, and that suddenly he fell. The plaintiff described his fall from the scaffold in his deposition as follows:

"I was just working with the torch, and the scaffold let loose and down I went.

* * *

The next thing I know, the scaffold is—I was falling, going down off the scaffold.

* * *

I just know that I was coming off the scaffold, that something broke, and I hit the ground.

* * *

Well, one of the ends came loose, the pin came out of it and this whole thing, with your weight on it, you are standing in here, and with the weight on it, it pushes this end down and away she goes (indicating)."

When he was asked if he had examined the scaffold after his accident, Phillips answered:

"All I know is, that one end was hanging down and the pin was out of it. That's all I can recall on it."

Phillips stated that he did not know who had assembled the scaffold and that he also had no recollection of what the scaffold looked like, except that it was not brand new and that it was a "Baker" type scaffold. The plaintiff described what he meant by a "Baker" scaffold as one with four posts, four wheels and a plywood platform. He also stated that he would not be able to identify the scaffold. According to the plaintiff, "They all look alike." Additionally, he said that he did not know what had happened to the scaffold after his accident or where it was located. The plaintiff further admitted in his answers to the defendant's interrogatories that the scaffold involved in his accident had been wired by other workers to hold it together.

Attached to the defendant's motion for summary judgment were two invoices. The first invoice, dated October 1, 1979, indicated that the defendant sold 24 "Quick-Tower" scaffolds, model number 880—00, to a distributor, A to Z Equipment Company. The second invoice, dated December 18, 1979, indicated that A to Z sold two preassembled scaffolds to the plaintiff's employer, Turner Construction, which were to be delivered to the Burlington Northern Building. There was, however, an inconsistency on the face of this second invoice, since although it contained the model numbers for Quick Towers, it referred to the scaffolds as "Speedtowers," which was the name of another type of scaffold manufactured by the defendant.

Also attached to the defendant's motion was the written report and deposition testimony of the plaintiff's expert witness, Joseph Ryan. Ryan, who held a doctoral degree in human factor engineering, stated in his deposition that since he was unable to inspect the actual scaffold involved in the plaintiff's accident, he instead examined one of the defendant's Quick-Tower scaffolds which had been represented to him as an exemplar of the type of scaffold involved in the plaintiff's accident. Ryan said that, in his opinion, the Quick-Tower he examined was defectively designed in that no horizontal cross bracing was provided which would prevent "racking." Ryan described "racking" as the process whereby a rectangle distorts into a parallelogram. Based upon the results of the test he conducted with the exemplar and also upon the plaintiff's deposition testimony, Ryan opined that the plaintiff's accident was caused when the scaffold upon which he was working "racked." This, Ryan claimed, caused the plywood platform upon which the plaintiff was standing at the time to fall through the scaffold's metal frame.

However, Ryan also admitted in his deposition that the plywood platform might not have fallen through the metal frame without the intervening action of the plaintiff's co-worker pushing the scaffold. He further stated on cross-examination that a worn-out plywood board could have increased the likelihood that racking would have caused the platform to fall out. While the scaffold that Ryan tested did not have any cleats securing the platform to the frame, Ryan conceded that he could not be sure whether or not the accident scaffold had been equipped with such devices. Ryan also said that the plaintiff's statement that "something broke" suggests that something actually broke on the scaffold or that some part, other than the platform, disengaged from the rest of the scaffold. Ryan further observed that plaintiff's descriptions of the scaffold both before and after the accident indicate that a metal portion could have been wired together after previously breaking and that thereafter the plaintiff fell when the wire or a pin broke. Ryan admitted that it would have been helpful if he had had the actual scaffold available so the integrity of all components could than have been tested.

The defendant also attached the affidavit of its own expert, Robert Taylor, to its motion for summary judgment. Taylor, who held a master's degree in mechanical engineering, stated in the affidavit that it was an absolute scientific certainty that no accident would have occurred if the plaintiff used a Quick-Tower which had been constructed in compliance with manufacturing specifications and tolerances and which had been properly assembled. Taylor also said that

several causes for the plaintiff's accident were possible in addition to design or mechanical defects. Taylor opined that one corner of the plywood platform on a Quick-Tower could have separated and dropped because the two tabs which support each corner might have been missing or broken due to product misuse or abuse or because parts were either mismatched or had deteriorated due to bending, cracking or corrosion.

Taylor disagreed with Ryan's opinion that the plaintiff fell because the scaffold "racked," causing the platform to fall due to insufficient cross bracing. Taylor said that Ryan's explanation was inconsistent with the plaintiff's description of the scaffold after the accident because the plaintiff claimed that one end of the platform was hanging down with the pin out. Based on the plaintiff's deposition testimony, Taylor concluded that one of the metal side rails became disengaged from the end frame and dropped. This interpretation of what happened was contrary to Ryan's conclusion that the plywood platform moved sideways and dropped through the side rails due to a racking effect. Taylor stated that the plaintiff's admission that the scaffold had been wired together suggests some scaffold parts may have been missing, damaged or, at the very least, in need of repair.

At the hearing on the defendant's motion for summary judgment, the trial court determined that the plaintiff could not show that there was a defect in the scaffold when it left the defendant's control or that this defect in the scaffold caused him to fall. The court's conclusion was based upon the plaintiff's failure to produce the scaffold involved in the accident, his failure to produce a photograph depicting the defect in the scaffold, and his failure to present any expert testimony that the plaintiff's fall could only have been caused by a defect in manufacturing process. Accordingly, the court granted the defendant's motion for summary judgment on both counts of the plaintiff's complaint. The plaintiff now appeals.

Initially, the plaintiff contends that on a motion for summary judgment the court is to consider the evidence strictly against the moving party and liberally in favor of the opponent, that the movant's right to judgment must be clear and free from doubt, and thus, summary judgment is not a proper disposition where, as here, fair-minded persons could draw different conclusions from the evidence. Under this standard, plaintiff submits that a genuine issue of material fact existed as to why the scaffold actually collapsed. Plaintiff argues that the differing opinions of the experts show that fair-minded persons could draw different conclusions from the evidence presented as to why the scaffold actually collapsed. Accordingly, he argues that the

trial court improperly granted the defendant's motion for summary judgment and that he should be permitted an opportunity to present his case to a jury.

The defendant, on the other hand, argues that the evidence presented to the trial court provides numerous reasons for the scaffold's collapse besides any alleged design defect. The defendant claims that without producing the accident scaffold, the plaintiff has failed to present any evidence on the critical element in both his negligence and strict products liability claims. Since the plaintiff did not and could not produce the scaffold, he will not be able to present any evidence that a defect in the scaffold actually caused his accident. Consequently, the defendant argues the plaintiff has failed to show and cannot show that any defect existed at the time the scaffold left defendant's control. Hence, without the production of the scaffold that was involved in the accident, defendant asserts, a jury could only speculate that the plaintiff's injuries were caused by some defect in the scaffold and that that defect was present when the scaffold left the defendant's control. Under such circumstances, the defendant concludes that the trial court properly granted its motion and entered summary judgment in its favor.

■ In reviewing an order of the circuit court granting a motion for summary judgment, this court must determine whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); *Rivera v. Mahogony Corp.* (1986), 145 Ill. App. 3d 213, 494 N.E.2d 660.

■ As our supreme court held in *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497, a moving party must show, as a matter of law, that he is entitled to judgment. Moreover, any factual dispute must be established by affidavits or deposition testimony of evidentiary facts which support the position of the opposing party. (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457, 459.) While a plaintiff responding to a motion for summary judgment is not required to prove his case at the summary judgment stage, he must, nevertheless, present some evidentiary facts to support the elements of his claim. *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444.

■ Specifically, here the plaintiff was required to present some evidence concerning the absence of abnormal use and the condition of the product when it left the defendant's control and/or fault of the defendant in producing an unreasonably dangerous product. (See *Ge-*

*nus v. Pride Container Corp.* (1986), 141 Ill. App. 3d 947, 491 N.E.2d 95; *Ralston,* 129 Ill. App. 3d at 1059-60, 473 N.E.2d at 451.) While the exact cause of the injury need not be proven, plaintiff must establish a credible basis for a reasonable inference that a condition of the product proximately caused the injury and for elimination of reasonable secondary causes. (*Ralston,* 129 Ill. App. 3d at 1060, 473 N.E.2d at 451.) No inference of defectiveness arises from the mere fact that an injury occurred.

■■ ■ This court has stated that while it is true that a *prima facie* case may be established exclusively from circumstantial evidence, that evidence must have a reasonable probative basis, for the jury will not be permitted to engage in speculation. (*Rockett v. Chevrolet Motor Division, General Motors Corp.* (1975), 31 Ill. App. 3d 217, 222, 334 N.E.2d 764, 768.) Here, we find that the record in this case demonstrates that the plaintiff did not produce evidentiary facts to support his case and that, hence, the circuit court correctly entered summary judgment in favor of the defendant.

In order to prevail on his negligence claim, the plaintiff had to establish by way of some evidentiary material that the defendant owed plaintiff a duty in connection with the scaffold which the defendant failed to perform and that the injury the plaintiff sustained was the proximate result of that breach of duty. (*Kirk v. Stineway Drug Store Co.* (1963), 38 Ill. App. 2d 415, 424-25, 187 N.E.2d 307, 311.) In order to prevail on his strict products liability claim, the plaintiff had to prove that his injury resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the defendant's control. See *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182, 188.

■■ In Illinois a manufacturer is under a nondelegable duty to produce a product that is reasonably safe. (*Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 117, 454 N.E.2d 197, 203.) Thus, the breach of duty is the same in both a negligence and strict products liability claim, but the key distinction between a negligence claim and a strict liability claim lies in the fault concept. In a negligence claim, the focus is on the fault of the defendant. In a strict products claim, the focus is on the condition of the product, regardless of fault. *Coney,* 97 Ill. 2d at 117-18, 454 N.E.2d at 203.

We believe that the situation presented in *Shramek v. General Motors Corp.* (1966), 69 Ill. App. 2d 72, 216 N.E.2d 244, is similar to that presented in this case. In *Shramek* the plaintiff was injured when the automobile in which he was riding crashed after one of the tires

suffered a blowout. He filed both a negligence claim and a warranty claim against the tire and auto manufacturers claiming that there was a defect in the tire at the time it left the control of the manufacturer or seller. However, the accident tire was never examined for the presence of a defect and could not be located. The circuit court granted the manufacturers' motions for summary judgment, and the appellate court affirmed. There, this court held that summary judgment in that case was both proper and required because the record conclusively demonstrated that the plaintiff could never prove, either by direct or circumstantial evidence, that the accident was caused by a tire which was defective. (*Shramek*, 69 Ill. App. 2d at 77, 216 N.E.2d at 248.) The court noted that the mere occurrence of a blowout does not establish a manufacturer's negligence or that the tire was defective since blowouts can be attributed to a myriad of causes. The court stated:

"[A]side from a superficial inspection of the damaged car and tire after the accident by plaintiff and his cousin, the tire in question was never subjected to an examination which would reveal that the blowout was due to a preexisting defect. Thus, without any examination of the tire designed to elicit the cause of the blowout and without the tire itself or any hope or expectation for its recovery, plaintiff could never prove, directly or inferentially, a case of negligence, breach of warranty or strict liability." *Shramek*, 69 Ill. App. 2d at 78, 216 N.E.2d at 249.

Similarly in this case, plaintiff Phillips must have presented some evidentiary facts to support the elements of his products liability claims based in negligence and strict liability. The scaffold here was never examined for the presence of preexisting defects. The record also conclusively demonstrates that the plaintiff Phillips could never prove, either by direct or circumstantial evidence, that the accident was caused by a defective scaffold, since he did not and could not produce the scaffold.

This principle has been applied in other cases of a similar nature to the case at bar. See *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444; *Vuletich v. Alivotvodic* (1979), 73 Ill. App. 3d 927, 392 N.E.2d 663; *Rockett v. Chevrolet Motor Division, General Motors Corp.* (1975), 31 Ill. App. 3d 217, 222, 334 N.E.2d 764, 769. But *cf. Stewart v. B. F. Goodrich Co.* (1987), 153 Ill. App. 3d 1078, 506 N.E.2d 783 (a Second District decision, where there were, at least, photos of the defective part (a tire) after the accident available).

■ Thus, plaintiff cannot present any evidentiary facts as to the negligence claim to establish that plaintiff's injuries were proximately

caused by defendant's breach of any duty owing to plaintiff, and he also cannot present any evidentiary facts in support of his strict liability claim to establish that the condition existed at the time the scaffold left the defendant's control. The mere occurrence of the collapse of the scaffold here, like the blowout in *Shramek*, does not establish the defendant manufacturer's negligence, nor does it establish that the scaffold was defective when it left the manufacturer's control. Without an examination of the scaffold itself to determine if the collapse was a result of a preexisting defect, Phillips could never prove, directly or inferentially, a claim based in negligence or strict liability.

Therefore, for the reasons stated above, the judgment of the circuit court of Cook County, which granted summary judgment to the defendant, United States Waco Corporation, is affirmed.

Judgment affirmed.

O'CONNOR and MANNING, JJ., concur.