JOHN E. FLISZAR, Plaintiff-Appellant, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellee (Peterson Electric Panel Manufacturing Company *et al.*, Defendants).

First District (2nd Division) No. 87—1667

Opinion filed August 9, 1988.

Eugene J. Berkes, of Chicago, for appellant.

Gerald J. Porento and Stuart J. Albert, both of Commonwealth Edison Company, and Hugh C. Griffin and Diane I. Jennings, both of Lord, Bissell & Brook, both of Chicago, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff brings this action against Commonwealth Edison for negligence and strict liability in tort; Althoff Electric for negligent inspection and maintenance of an electrical distribution panel; Peterson Electric Co. for improper design of the panel; and Paulmarc Electric Co. for its negligent installation. The trial court granted defendant Commonwealth Edison's motion to dismiss it from the suit pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615).

Plaintiff, employed as chief electrical engineer by Cotter & Company, was injured on June 12, 1984, when an explosion occurred in an electrical distribution panel on which he was working. Sometime prior to the date of the accident, Cotter had purchased the 1,600 amp., 277-480 volt electrical distribution panel from defendant Peterson Electric Co., and had it installed on Cotter's premises by defendant Paulmarc Electric Co., where it was maintained and repaired by defendant Althoff Electric, Inc.

The accident occurred when a latch bar came loose from the right electrical panel door and made contact with the transformers within the distribution panel, causing an electrical short circuit and explosion, as a result of which plaintiff suffered severe, permanent, and disabling burns and disfigurement to his body, limbs, and nervous system.

Plaintiff's negligence and strict liability claims against Peterson, Paulmarc and Althoff remain pending in the trial court and are not involved in this suit. In dismissing plaintiff's claims against Edison, the trial judge stated, "I don't find the duty exists." This appeal fol-

lowed. The issue on appeal, therefore, is whether the trial judge erred in dismissing the negligence and strict liability counts of plaintiff's complaint against Commonwealth Edison.

## I

This court discussed the guidelines to be followed in considering a section 2—615 motion in *Claire Associates v. Pontikes* (1986), 151 Ill. App. 3d 116, 502 N.E.2d 1186, as follows:

"A motion to dismiss a complaint for failure to state a cause of action attacks the legal sufficiency, as opposed to the factual sufficiency, of a complaint. [Citation.] The facts pleaded in the complaint are significant only insofar as they are necessary to state the elements of a claim upon which relief may be granted. A plaintiff is not required to prove his case in the pleading stage; rather, he must merely allege sufficient facts to state all the elements which are necessary to constitute his cause of action ***. It is only where no state of facts proved under the pleading would entitle plaintiff to recovery that a motion to dismiss should be granted under section 2—615. [Citation.] In sum, it is not enough merely to inform the defendant of the nature of the claim; the pleading must also provide a factual premise underlying the claim." *Claire Associates v. Pontikes* (1986), 151 Ill. App. 3d 116, 123, 502 N.E.2d 1186.

To be legally sufficient, a complaint for negligence must set forth facts which establish the existence of a duty owed by defendant to plaintiff, a breach of that duty, and an injury proximately resulting from this breach. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307; see generally M. Polelle & B. Ottley, Illinois Tort Law ch. 16 (1985).) The determination of whether a duty exists is an issue of law to be determined by the court. *Kavanaugh v. Midwest Club, Inc.* (1987), 164 Ill. App. 3d 213, 217, 517 N.E.2d 656.

Plaintiff alleges that Commonwealth Edison had a duty to exercise reasonable care and caution in the operation, management, maintenance and control of its transformer equipment so as to avoid injury to persons on premises serviced by Edison. His complaint further alleges that Edison breached this duty by failing to supply high line or backup high line fuses, or to test, inspect, maintain, or repair the high line fuses on the transformer. However, plaintiff cites no authority to buttress his theory that Edison has any duty at all to supply fuses of any kind on its transformers.

Plaintiff maintains that defendant contorts the allegations of his negligence count into allegations of a duty on Edison's part to be re-

sponsible for someone else's equipment; but, according to the plaintiff's complaint filed in this case, the latch on the door of the electrical distribution panel located within the customer's building became loose and came into contact with the transformers within the panel, thereby causing a short circuit and the resultant explosion. Plaintiff is attempting to establish that Edison has the duty to stop somehow the flow of electricity into a customer's building whenever any electrical equipment inside the building malfunctions. Defendant maintains that its liability does not extend to injuries or damages caused by equipment owned by its customers.

As we have previously noted, the determination of the existence of a duty is an issue of law to be determined by the court. (*Simmons v. Aldi-Brenner Co.* (1987), 162 Ill. App. 3d 238, 241, 515 N.E.2d 403.) The court in that case said:

> "In determining whether the law imposes a duty, foreseeability of possible harm alone is not the test, for in retrospect almost every occurrence may appear to be foreseeable. The likelihood of injury from the existence of a condition, the magnitude of guarding against it, and the consequences of placing the burden upon the defendant must be taken into account." 162 Ill. App. 3d at 241-42.

In another case involving a negligence claim against the electric company, this court said that a ruling that the electric company should be required to use insulated wire in a specific circumstance would be tantamount to requiring defendants and all who are engaged in the business of supplying electrical service to insulate all of their lines. The court considered public policy questions and social requirements and concluded, "The minimal risk of injury does not justify the imposition of such a heavy burden on the electrical business nor on the public who will undoubtedly bear the ultimate cost." *Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064, 1071, 344 N.E.2d 509.

Defendant cites several cases as authority for the proposition that a utility owes no duty to protect against damages or injuries caused by defects in its customers' equipment or that of other parties. In *Drury v. East St. Louis Light & Power Co.* (1915), 194 Ill. App. 121, the court found that the power company did not have a duty to provide lightning arresters or other appliances on its secondary wires to prevent heavier currents from being carried into the school building over its wires. In that case decedent received a fatal electrical shock as a result of the improper grounding of the school's own electrical wiring by the school's electrical contractor.

In another early case, the court found that the supplier of electricity was not responsible for injury caused by defective wiring owned and controlled by another party. The court stated, "In order, therefore, to hold the seller liable it must appear that it continued to furnish and turn on the dangerous current after knowing that the purchaser had permitted the equipment to become defective." *Pressley v. Bloomington & Normal Ry. & Light Co.* (1916), 271 Ill. 622, 630, Ill. N.E. 511.

In a third case cited by defendant, the court stated:

"It has been well established that a utility company is not responsible for the condition and maintenance of fixtures which it did not install, own, or control and hence is not liable for injuries caused by their defective condition or operation. *** Not only is a utility company absolved from the duty of inspecting and maintaining fixtures and equipment not owned or controlled by it, but if the same are the property of the owner of the premises, then the owner-consumer assumes the burden of maintaining and inspecting such fixtures and equipment on his property in a manner reasonably suited to meet the service to which they are to be put, and the company has the right to assume that these duties have been performed by such owners." *Hulett v. Central Illinois Light Co.* (1980), 83 Ill. App. 3d 195, 198-99, 403 N.E.2d 790.

Although there apparently is no Illinois authority regarding the electric company's duty to install fuses on its transformers, the Missouri Supreme Court in addressing itself to this issue held that "defendant did not owe any duty to plaintiffs to fuse its transformer so as to afford protection to plaintiffs' property from damage resulting from defects in the wires owned and controlled by plaintiffs." (*Reichholdt v. Union Electric Co.* (Mo. 1959), 329 S.W.2d 634, 637.) In that case a fire started as a result of a short circuit in the electric wires at a point where they passed through the garage wall of plaintiff's house. The court concluded that plaintiff could have prevented the fire by placing a circuit breaker on the wiring which he controlled, and that there was no provision in the code to require any standard of fusing by the distributor in order to protect the customers' lines. The court quoted from 18 Am. Jur. *Electricity* sec. 102, "It is generally held that where the electric wires or other appliances which have caused injury are not owned or controlled by the company furnishing the power, such company is not liable for the damage sustained." *Reichholdt*, 329 S.W.2d at 638, quoting 18 Am. Jur. *Electricity* §102. See also 134 A.L.R. 507, 508.

■ Similarly, in the instant case, Edison did not owe any duty to plaintiff to fuse its transformers to protect plaintiff from the malfunction of his employer's equipment. Public policy considerations do not require the finding of such a duty. Indeed, the opposite is true. " 'Persons engaged in the transmission of electricity are not insurers of the safety of the public.' " (*Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064, 1068, 344 N.E.2d 509, quoting *Austin v. Public Service Co.* (1921), 299 Ill. 112, 119, 132 N.E. 458.) If Edison and other electric companies were to be held responsible for the malfunctions of their customers' equipment, the burden on the utilities and ultimately the cost they would have to pass on to their patrons would be incalculable.

## II

Count II of plaintiff's complaint alleges that Edison owed him a duty not to place an unreasonably dangerous product into the stream of commerce. Plaintiff alleges that the electricity supplied by Edison was unreasonably dangerous because of Edison's failure to install on its transformers proper fuses or other safety devices which were properly treated, maintained, repaired, or inspected. Plaintiff further alleges that as a direct and proximate result of Edison's breach of such duty, plaintiff was severely injured.

In *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, the Illinois Supreme Court had under consideration a suit filed against an electric company on the basis of strict liability in tort. The court quoted from the Restatement (Second) of Torts, which was adopted by the court in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182. Section 402A of the Restatement provided:

"(1) One who sells any product in a *defective condition unreasonably dangerous* to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." (Emphasis added.) Restatement (Second) of Torts §402A (1965).

The allegations of the strict liability count brought in *Genaust* are similar to the allegations contained in the instant case. In *Genaust*, it was alleged that Illinois Power was in the business of manufacturing and selling electricity to the general public and that, as a part of the system under which it sold and distributed the electricity, it owned and maintained certain power wires. The plaintiff charged that the electricity was in an unreasonably dangerous condition because the power company had not sufficiently insulated its wires and had placed them too close to the ground. (*Genaust*, 62 Ill. 2d at 461.) In the instant case, plaintiff alleges that the electricity was unreasonably dangerous because the company did not provide safety devices on its transformers to cut off the flow of electricity in the event of a malfunction of a customer's equipment.

The plaintiff in *Genaust* contended that the wires were "packaging" for the electricity, as to which contention the court stated:

"Even if plaintiff's contention were accepted, the doctrine of strict liability would still not be applicable. The power wires were not sold to any consumer, but were owned and controlled by Illinois Power. The only 'product' that was in the process of being old was the electricity itself, and plaintiff does not contend there was any defect in the electricity." 62 Ill. 2d at 464.

Plaintiff here contends that *Genaust* and his case are distinguishable in that there are no allegations of defective packaging in the case at bar. However, plaintiff overlooks the circumstance that a similarity does exist between the wires in *Genaust* and the transformer in this case in that they are both part of the "system" employed to deliver electricity to consumers.

Plaintiff emphasizes two points. First, he contends that duty is not an element in a strict liability claim, and second, that electricity is a product. As to his first point, plaintiff concedes that this court has previously used the word "duty" in discussing strict liability. In *Phillips v. United States Waco Corp.* (1987), 163 Ill. App. 3d 410, 516 N.E.2d 670, for example, we stated:

"In Illinois a manufacturer is under a nondelegable duty to produce a product that is reasonably safe. [Citation.] Thus, the breach of duty is the same in both a negligence claim and strict products liability claim, but the key distinction between a negligence claim and a strict liability claim lies in the fault concept." *Phillips v. United States Waco Corp.* (1987), 163 Ill. App. 3d 410, 417, 516 N.E.2d 670.

Plaintiff, however, quotes another passage from the same opinion and maintains that it clearly illustrates that duty is not an element of

strict liability:

"In order to prevail on his strict products liability claim, the plaintiff had to prove that his injury resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the defendant's control." 163 Ill. App. 3d at 417.

Defendant responds by quoting from a case cited by both parties, *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, as follows:

"Even if we were to agree that such collisions are foreseeable, foreseeability alone does not define *a manufacturer's duty in products liability.* [Emphasis added.]

A manufacturer is not under a *duty* in strict liability to design a product which is totally incapable of injuring those who foreseeably come in contact with the product. [Emphasis added.] Products liability does not make the manufacturer an insurer of all foreseeable accidents which involve its product. Virtually, any product is capable of producing injury when put to certain uses or misuses *** the injuries must arise from a distinct defect in the product, a defect which subjects those exposed to the product to an *unreasonable* risk of harm. [Emphasis in original.]" (74 Ill. 2d at 211.)

Defendant also quotes another passage from *Hunt* in which the trial judge stated, "The elements of a cause of action in strict products liability, of course, differ markedly from their counterparts in negligence." (74 Ill. 2d at 210.) Plaintiff maintains that *Hunt* underscores strict liability theory "rather than establishing duty as an element of a strict liability in tort claim."

■ Plaintiff's second major point is that electricity is a product. The Illinois Supreme Court has been faced with the question of whether electricity is a product on two occasions. In *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, discussed above, the court assumed *arguendo* that electricity was a product, but held that strict liability did not apply in the case. In *Elgin Airport Inn, Inc. v. Commonwealth Edison Co.* (1982), 89 Ill. 2d 138, 432 N.E.2d 259, the supreme court adopted the appellate court's finding that electricity was a product, but found that even though the current was defective in that case, it was not an unreasonably dangerous product. (89 Ill. 2d at 144.) Thus far, the supreme court has not found strict liability to be applicable to suppliers of electricity. See generally M. Shapo, the Law of Products Liability §7.03[3] (1987).

This court conformed with that finding in *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 465 N.E.2d 513, in

which we stated:

"While the plaintiff is correct in noting that Illinois courts have characterized electricity as a ' "*** silent, deadly and instantaneous force ***" ' [citations], such precedent does not mandate the imposition of absolute liability upon electrical power companies. *** Absolute liability has not been imposed on power companies in Illinois because of the obvious social and economic burdens, and Illinois courts have frequently echoed the principle that power companies are not absolute insurers of public safety." 124 Ill. App. 3d at 667.

■ Accordingly, we conclude that even if we were to accept the concept of electricity as a product and were to assume, *arguendo*, that duty is not an element in a strict liability case, plaintiff still does not adequately allege all of the necessary elements in his complaint in order to survive a section 2—615 attack. Before a seller of a product can be held to be liable under a strict liability theory, the injured party must show that the product was "in a defective condition unreasonably dangerous." (Restatement (Second) of Torts §402A (1) (1965).) According to comment *g* to section 402A, a product is in a defective condition if "at the time it leaves the seller's hands, [it is] in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." (Restatement (Second) of Torts §402A, comment *g* (1965).) If subsequent mishandling or other causes make it harmful, the seller is not liable. Comment *h* states, "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts §402A, comment *h* (1965).

As the supreme court stated in *Hunt*:

"Virtually any product is capable of producing injury when put to certain uses or misuses. *** Injuries are not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product. [Citation.] The injuries must derive from a distinct defect in the product ***. The Restatement (Second) of Torts concludes that strict liability applies only when the product is 'dangerous to an extent *beyond* that which would be contemplated by the ordinary [person] ***, with the ordinary knowledge common to the community as to its characteristics.' " (Emphasis in original.) *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 211-12, 384 N.E. 2d 368.

■ This court has ruled in other cases that strict liability does

not apply when an injury results from the inherently obvious nature or property of a product. In a case involving a burn injury from hot steam the court said, "We do not believe that hot steam pipes are defective merely because they are hot. Being hot is a common propensity and inherent property of steam pipes and is to be reasonably expected in light of their nature and intended function." (*Hubbard v. Chicago Housing Authority* (1985), 138 Ill. App. 3d 1013, 1018, 487 N.E.2d 20.) In another case, this court stated:

"Similarly, we do not believe that a rat poison, manufactured as a rat poison and sold as a rat poison for use as a rat poison is defective or dangerous to an extent beyond that which would be contemplated by the ordinary consumer of rat poison simply because the poison has the propensity to contaminate living beings other than rats." *Camp Creek Duck Farm, Inc. v. Shell Oil Co.* (1981), 103 Ill. App. 3d 81, 85, 430 N.E.2d 385.

We return to *Hunt.* "The injuries must derive from a distinct defect in the product ***." (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 211, 384 N.E.2d 368.) Plaintiff's complaint pleads no legally cognizable inherent defect in electricity.

Accordingly, for the reasons expressed, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HARTMAN, P.J., and EGAN, J., concur.