I respectfully dissent with the opinion and judgment of the majority in this case. I would adopt instead the reasoning set out by the trial court. Specifically, absent notice to CEI of a specific problem with the customer's residential electric installation, there was no breach of duty. In reaching that decision, the trial court relied on Otte v. Dayton Power LightCo. (1988), 37 Ohio St.3d 33, the same case which the majority relies upon. However, I believe that the trial court's interpretation of Otte is the correct interpretation.
We all agree that Otte has set out the standard for the degree of care. Specifically, the court determined that the liability of the electric company depended upon:
 "whether or not the utility has exercised the highest degree of care in its business of delivering electricity to its sundry consumers. In such a case, the National Electric Safety Code ("NESC") controls the standards of a public utility in the installation, inspection and maintenance of its equipment which, of course, includes its transmission and distribution lines. The National Electric Code ("NEC") controls how the customer should install and maintain his own equipment and wiring." Otte at 39.
However, the court in Otte goes on to recognize:
 "that it must be stressed that a power company owes no duty to inspect or repair its customer's distribution system. Naki v. Hawaiian Elec. Co. (1968), 50 Haw. 416, 442 P.2d 55." (Emphasis in original.) Otte at 38.
Further, the court found that:
 "`* * * [A utility] cannot, either practically or legally, control the details of what appliances with what protective devices its customers are plugging in, or vary * * * its rates accordingly; it can only insist on compliance with general standards like the national electric code [sic], which will inevitably lag behind the state of the art.'" Otte at 39, quoting Elgin Airport Inn, Inc. v. Commonwealth Edison Co.
(1982), 89 Ill.2d 138, 143.
However, the majority greatly expands this concept of liability in its opinion by concluding "that a public utility has a duty to comply with common electrical practices when providing services in a customer's home." I believe that conclusion is in direct contradiction to the standard and exception set out in Otte.
Specifically, both appellant and the majority rely primarily upon the illusory factual conflict set out by the affidavit of appellant's expert, Ralph Dolence. Dolence's affidavit stated that he believed that the action of the CEI employees:
 "deviated from common electrical practices and amounts to a failure on CEI's employees to exercise professionalism within their duties and responsibilities under the circumstances, causing the fire."
The majority concludes that Dolence's affidavit created a material issue of fact. However, that affidavit does not address the standard and exception to liability set out and explained in Otte. Specifically, they fail to address why the Keoughs' lack of compliance with the NEC did not trigger the exception to liability.[1] Very simply, appellant had to deal with the undisputed fact that the customer's electrical system was defective and that the CEI employees had no appropriate notice of the defect and no opportunity to obtain such notice.
Further, the majority does not address appellee's reference and argumentation (found both in its motion in support of summary judgment and its appellate briefing) concerning the application of Public Utilities Commission of Ohio Regulation ("P.U.C.O."), Section II(B), which states the following:
 "Company responsibility: The company shall not be held responsible for any injury or damage which may result from defects in customer's wiring or the use of electrical appliances or equipment on the customer's premises." See also, State ex rel., Ohio Edison Co. v. Morris (July 24, 1984), Stark App. No. CA-6432, unreported, 1984 WL 7590."
An expert's opinion as to causation only creates a material issue of fact when the expert measures his or her factual findings against the correct legal standard.Otte and P.U.C.O. Regulation, Section II(B) set out the appropriate legal standards to be used in determining the utility's duty to the Keoughs. Those standards and their exceptions were not addressed by appellant's experts.
The court of appeals is not the proper forum in which to address the wisdom of a public policy which clearly intends to limit the duty owed by an electric utility company to a residential customer with a defective electrical system. Rather, our job is to apply the mandate and exception as it is set out in both Otte and the P.U.C.O. Regulations.
The instant trial court found that CEI had:
 "* * * no duty to inspect the Keoughs' electrical circuits and appliance safety and functionality. There was absolutely no evidence that CEI knew or should of known of the defect in the dryer outlet."
Consequently, I agree with the trial court that there was no breach of any duty, demonstrated in the evidentiary materials referenced in the summary judgment exercise. I, therefore, would affirm the judgment of the trial court.
 ___________________________________________________ JUDITH A. CHRISTLEY, JUDGE
[1] It was uncontested that the 220 outlet was not in compliance with the NEC and that there was no notice of the potential problem to CEI.