LEE ZIMMER, Plaintiff-Appellant, v. THE CELOTEX CORPORATION *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—88—3578

Opinion filed December 29, 1989.

Robert J. Cooney & Associates, of Chicago (James R. Hopkinson and Kathy Bryne, of counsel), for appellant.

Williams & Montgomery, of Chicago (James K. Horstman, Barry L. Kroll, Bruce W. Lyon, and Lloyd E. Williams, Jr., of counsel), for appellees.

JUSTICE LaPORTA delivered the opinion of the court:

This action was brought to recover damages for personal injuries allegedly sustained by plaintiff as a result of his exposure to asbestos-containing insulation products during his employment as a shipfitter in the Brooklyn, New York, and Bayonne, New Jersey, naval shipyards from 1941 to 1944 and from 1946 to 1955. The circuit court granted summary judgment in favor of several defendants based upon the lack of evidence that plaintiff was ever exposed to any asbestos products manufactured, sold, or distributed by the defendants.

Plaintiff appeals the grant of summary judgment in favor of defendants.

The record reveals that plaintiff instituted this action against 13 defendants seeking recovery for personal injuries allegedly sustained as a result of his exposure to the defendants' asbestos products while he worked as a shipfitter in the naval shipyards in Brooklyn, New York, and in Bayonne, New Jersey, from 1941 to 1944 and from 1946 to 1955. Of the 13 defendants originally named by plaintiff, only Eagle-Picher Industries, Inc. (Eagle-Picher), Fibreboard Corporation (Fibreboard), and Owens-Illinois, Inc. (Owens-Illinois), remain as defendants and are parties to this appeal. Plaintiff's second amended complaint sought recovery against defendants under theories of negligence and strict product liability. Defendants denied that plaintiff was ever exposed to any of their products and denied liability for his alleged injuries.

During discovery, plaintiff filed his sworn answers to interrogatories propounded by defendants wherein he identified only Johns-Manville Sales Corporation as a manufacturer of asbestos products to which he was exposed while employed as a shipfitter. At his deposition, plaintiff indicated that he could not identify the manufacturers of the asbestos products to which he had been exposed, and he specifically stated that he could not recall ever having been exposed to asbestos products manufactured by Fibreboard.

Defendants subsequently moved for summary judgment based upon the plaintiff's inability to establish actual exposure to any of their products. Plaintiff's response to defendants' motion for summary judgment asserted that proof of his exposure to defendants' products could be shown through the deposition testimony given by Moe Rapchick, Remo Paternoster, Max Morch, and Howard Bauer in unrelated lawsuits involving asbestos claims. Plaintiff asserted that

these four men were employed at the Brooklyn and Bayonne shipyards at the same time as plaintiff and worked on some of the same ships as plaintiff. Plaintiff also filed an affidavit and copies of the deposition transcripts of Rapchick, Paternoster, Morch, and Bauer in opposition to defendants' motion.

In his affidavit, plaintiff stated that he worked at the Brooklyn and Bayonne shipyards from 1941 to 1944 and from 1946 to 1955; that he worked in close proximity to boilermakers, pipefitters, sheetmetal workers, and pipe coverers; and that he specifically recalled working with a man named Moe Rapchick. Plaintiff also indicated that he worked on hundreds of American and British ships, including the New Jersey, the Franklin Delano Roosevelt, the Edison, the Brooklyn, the Philadelphia, the Kearsage, the Bennington, the Murphy, the Saratoga, the Oriskany, the Kearney, the Quincy, the Vincennes, the Missouri, the Arkansas, the Juno, the Atlanta, the Pensacola, the Augusta, the Helena, the Omaha, the Iowa, the CV 31, the South Carolina, the Bon Homme Richard, and the Franklin.

The deposition testimony of Moe Rapchick reflected that he began working at the Brooklyn naval shipyard in March 1941 and left at the end of 1945. During that period he was employed as a sheetmetal worker and recalled working aboard the Iowa, the Missouri, the Kearsage, the Franklin Delano Roosevelt, the South Carolina, the Murphy, and the CV 31. He estimated that the shipyard was about two square miles in size and employed approximately 55,000 people. Rapchick specifically recalled working with or near the asbestos products of Johns-Manville, Eagle-Picher, Owens-Illinois, Fibreboard, Celotex, Armstrong and Keene, but could not state that a particular product was used in a particular month on a particular ship. Rapchick stated further that the asbestos products were used all over the ships and were shared by different tradesmen, including shipfitters. The workers were covered with insulation as it drifted from the tradesmen working above and next to them.

The deposition testimony of Remo Paternoster reflected that he worked as a boilermaker in the Brooklyn naval shipyard from 1933 to 1946, from 1948 to 1949, and from 1950 to 1966. He remembered working aboard the Iowa, the Missouri, the Bon Homme Richard, and the Oriskany. While working on these ships, Paternoster worked with other trades, including shipfitters, in areas that were filled with asbestos shavings and dust. He recalled working with or near the asbestos products of Owens-Corning, Eagle-Picher, and Celotex.

The deposition testimony of Max Morch reflected that he worked as a pipefitter and installed asbestos insulation on ships in the Brook-

lyn naval shipyard from 1942 to 1946. Morch recalled working aboard the Iowa, the Missouri, the Franklin Delano Roosevelt, and the Bon Homme Richard and remembered seeing the products of Fibreboard, Eagle-Picher, Keene, Celotex, and GAF.

The deposition testimony of Howard Bauer reflected that he worked in the Brooklyn naval shipyard from 1943 to 1944 and from 1946 to 1966. As a sheetmetal worker, Bauer installed insulation on ships and recalled seeing the products of Eagle-Picher, Armstrong, and Owens-Illinois during the entire period he worked at the shipyard.

Defendants filed a reply to plaintiff's response to their motion for summary judgment, and following a hearing on the motion, the trial court granted summary judgment in favor of defendants. In ruling on the motion, the trial judge indicated that although there was little doubt that plaintiff had been exposed to asbestos, he had not met certain minimum standards of proof required to prevent fraud in these types of cases. Plaintiff has appealed the trial court's order.

■■ ■ Summary judgment is proper where the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) In a products liability action the plaintiff must identify the manufacturer of the product and establish a causal relationship between the injury and the product. (*Schmidt v. Archer Iron Works, Inc.* (1970), 44 Ill. 2d 401, 405-06, 256 N.E.2d 6, 8, *cert. denied* (1970), 398 U.S. 959, 26 L. Ed. 2d 544, 90 S. Ct. 2173.) Although these elements may be proven by direct or circumstantial evidence, liability cannot be based on mere speculation, guess, or conjecture. Thus, where circumstantial evidence is relied upon, the circumstances must justify an inference of probability as distinguished from mere possibility. *Naden v. Celotex Corp.* (1989), 190 Ill. App. 3d 410, 415; *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 508, 418 N.E.2d 503, 505.

■ In products liability cases predicated upon the plaintiff's alleged exposure to asbestos-containing products, it has been held that the plaintiff must show that a particular defendant's product was used at the jobsite and that the plaintiff was in proximity to that product at the time it was being used. (*Blackston v. Shook & Fletcher Insulation Co.* (11th Cir. 1985), 764 F.2d 1480, 1481-82; *Odum v. Celotex Corp.* (11th Cir. 1985), 764 F.2d 1486, 1488.) The plaintiff's failure to identify any asbestos product of the defendant to which the plaintiff had been exposed provides a sufficient basis for the trial court to grant defendant's motion for summary judgment. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322, 91 L. Ed. 2d 265, 273, 106 S. Ct.

2548, 2552-53; *Naden v. Celotex Corp.* (1989), 190 Ill. App. 3d 410, 414; *Estate of Henderson v. W.R. Grace Co.* (1989), 185 Ill. App. 3d 523, 528-29, 541 N.E.2d 805, 808.

Plaintiff contends that although he was unable to identify the defendants or their products in his answers to interrogatories or during his deposition, the facts presented in his affidavit and in the deposition transcripts of Rapchick, Paternoster, Morch, and Bauer create the inference that he was exposed to the defendants' products. He asserts that this is sufficient to establish a genuine issue of material fact. We disagree.

The affidavit and deposition testimony before the court reflected that plaintiff worked in the shipyards in both Brooklyn, New York, and in Bayonne, New Jersey, from 1941 to 1944 and from 1946 to 1955. Plaintiff worked on hundreds of British and American ships, including some of those identified by Rapchick, Paternoster, Morch, and Bauer and recalled working with a man named Moe Rapchick. Although Rapchick, Paternoster, Morch, and Bauer were able to identify the defendants' products, they could not state that a particular product was used in a particular month on a particular ship. There was no evidence indicating how long these ships were in the shipyards or that these ships were in port only once. Moreover, there was no evidence that plaintiff worked on these ships at the exact same time as the other four men or in close proximity to them as the defendants' products were being used.

■ We believe that the evidence before the trial court was insufficient to create the inference that plaintiff was exposed to defendants' products. Consequently, the trial court was correct in finding that there was no genuine issue of material fact and that defendants were entitled to judgment as a matter of law. In making his ruling, the trial judge stated that the plaintiff had not met the minimum standards of proof required to prevent fraud in these types of cases. Although there is no evidence of fraud in the instant case, we agree that summary judgment is appropriate where the plaintiff has failed to present evidence of exposure to a particular defendant's product. If such a case were sent to a jury, the verdict would necessarily be based upon mere speculation, guess, or conjecture.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

EGAN, P.J., and McNAMARA, J., concur.