In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-3243

KYLE CARSON,

*Plaintiff-Appellant,*

*v.*

ALL ERECTION & CRANE RENTAL CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-1637-WTL-DML — **William T. Lawrence**, *Judge.*

ARGUED MAY 22, 2015 — DECIDED FEBRUARY 3, 2016

Before EASTERBROOK, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Kyle Carson was severely injured at work when he fell underneath the tread of a crane that his employer, White Construction, leased from defendant ALL Erection & Crane Rental Corporation (ALL). Carson sued ALL for negligence in Indiana state court, and ALL removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332. Carson contends that

ALL had a duty to conduct a reasonable inspection of the crane upon delivering it to White Construction, that ALL breached this duty by failing to conduct such an inspection, and that this breach was the proximate cause of his injury. The district court granted summary judgment for defendant ALL, finding that no reasonable jury could return a verdict for plaintiff Carson because there is no evidence in the record that ALL's alleged breach was the proximate cause of Carson's injury. We affirm.

I.  *Facts and Procedural Background*

Our account of the facts sets forth facts that are either undisputed or, if disputed, are stated so as to give Carson as the non-moving party the benefit of conflicts in and reasonable inferences from the evidence. See, e.g., *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014). In July 2012, ALL leased a crane to White Construction, specifically a Manitowoc 2250 Crawler Crane. In the summer of that same year, Carson was working for White Construction at a wind farm in Indiana where his employer had a contract to build wind turbines. Carson worked primarily as a crane oiler, providing general maintenance on the crane and serving as the "eyes and ears" of Joe Dowell, the crane operator with whom he was paired.

Carson was injured on September 20, 2012. On that day, Carson and Dowell were told to move the crane to a wind turbine platform several miles from where the crane started the day. During the long move the crane approached a road with overhead power lines. Carson knew that the crane had arrived at the road long before the power lines were to be lowered so that the crane could cross the road. He signaled for Dowell to stop the crane at the base of some wood matting placed to help the crane cross the road.

Dowell stopped the crane. But it then began moving forward again, and it moved onto the wood matting where Carson was standing. As the crane pushed one end of the matting down, the other end of the matting where Carson was standing began to rise into the air. Carson slid down the ramp the crane was creating and into its path. The crane's treads crushed his right foot, which had to be amputated.

Dowell testified that he took the crane out of its "travel detent," meaning that the crane should not have moved on its own. He said he did not know of anything that would have re-engaged the controls for forward movement. After the accident, the crane was inspected and then repaired by Craig Scholl, hired by White Construction, and by Michael Krueger, a crane mechanic employed by ALL. Scholl and Krueger concluded that the crane had moved forward because a malfunction in the controls for forward motion caused the throttles to re-engage without action by Dowell himself. The critical point for our purposes is that the problem was an intermittent one that was difficult to replicate (and thus even to detect).

To explain, in most crane operations, the operator pushes the crane's two joysticks forward to move forward and backward to move in reverse. Much like an accelerator on an ordinary automobile, which will return to idle when the driver takes his foot off the pedal, the throttles return to neutral if the operator lets go of them. For relatively long movements, however, this crane also had a feature comparable to cruise control on an automobile. The operator could engage a "detent" (a feature that would hold the throttles in place without continued pressure, but which could be released easily by the operator). The detent allowed the opera-

tor to keep the crane moving without applying continuous pressure to the throttles. Scholl attributed the unexpected movement of the crane to a failure of the solid-state electrical circuitry for this cruise-control mechanism.

Carson sued ALL for negligence under Indiana law. To prevail in a negligence action, "the plaintiff must prove a: (1) duty owed to plaintiff by defendant; (2) breach of the duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury that was proximately caused by defendant's breach of duty." *Hassan v. Begley*, 836 N.E.2d 303, 307 (Ind. App. 2005) (citation omitted). The district court held that defendant ALL did owe a duty to plaintiff to perform a proper inspection of the crane upon delivery. The court also found that because defendant did not specifically inspect the travel detent upon delivery, there was a genuine issue of material fact as to whether defendant breached that duty. The district court granted summary judgment for defendant ALL, however, because it found that plaintiff Carson offered no evidence of proximate cause. Carson has appealed.

II. *Analysis*

We review *de novo* the district court's grant of summary judgment. E.g., *Castro v. DeVry University, Inc.*, 786 F.3d 559, 563 (7th Cir. 2015). Summary judgment should be granted only when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We examine the record in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015); *Castro*, 786 F.3d at 563–64.

Before digging into tort law as applied to ALL, which leased the crane to Carson's employer, it is worth remembering what is not before us. Carson asserts no claim against his employer or fellow employees because Indiana's workers' compensation law barred such claims. Carson also asserts no claim against the crane manufacturer for a design or manufacturing defect. Our focus is thus on Indiana tort law applicable to a supplier of equipment or other chattel.

Indiana law "imposes a duty on the supplier of a chattel to conduct a proper inspection which would disclose the existence of a defect." *Dutchmen Mfg., Inc. v. Reynolds*, 849 N.E.2d 516, 522 (Ind. 2006). ALL argues that the undisputed evidence shows that a proper inspection would not have revealed any defect in the travel detent. Indiana law is also clear that "inquiry into the reasonable discoverability of a defect may be proper in evaluating whether a supplier has breached the duty of reasonable care but not in determining whether such duty exists." *McGlothlin v. M & U Trucking, Inc.*, 688 N.E.2d 1243, 1245 (Ind. 1997). This appeal thus turns on two questions. First, could a reasonable jury find that ALL breached its duty of reasonable care by failing to inspect the travel detent? Second, if ALL did breach its duty, could a reasonable jury find that the breach was a proximate cause of Carson's injury? We address these questions in turn.

A. *Breach of Duty*

ALL argues that there was simply no way to discover a defect in the solid-state electrical circuitry of the travel detent (the component of the travel detent that failed) because that circuitry cannot be inspected. For support, ALL cites deposition testimony from Scholl to this effect. It also cites deposition testimony from Krueger, who said that he is not

aware of a recommendation, from the manufacturer or any-
one else, that this component be inspected as part of preven-
tive maintenance on the crane. ALL argues, in sum, that the
defect here was not reasonably discoverable, so that a proper
inspection of the crane upon delivery need not have includ-
ed a pointless inspection of the travel detent.

Carson's best answer to this argument is highlighted by
an exchange at oral argument. Plaintiff's counsel was asked
whether an inspection would have shown the defect. Coun-
sel answered that the defect "certainly was found after the
accident." He went on to explain that since the defect was
discovered after the accident, it stands to reason that such a
defect could have been found if ALL had looked for it before
the accident.

That may be right in theory, but it is not consistent with
the evidence in this record. Scholl testified that in his post-
accident inspection, he spent an hour moving the crane, at-
tempting to simulate working conditions to see if the crane
would malfunction by having the travel detent engage on its
own. In the first hour of trying, he had not been able to repli-
cate the malfunction. After an hour, though, he returned the
joysticks to neutral and found that the travel detent had set
on its own. He then continued to manipulate the crane con-
trols, trying to recreate that malfunction of the travel detent.
He eventually found that the travel detent malfunctioned
intermittently.

To the extent the district court found that defendant ALL
had a duty to inspect the travel detent operation before de-
livery, we do not disagree, at least for purposes of summary
judgment. But the scope of that duty is another matter. It
would not be reasonable to infer that what Scholl did for ac-

cident reconstruction purposes should be a required part of a proper, routine inspection whenever a crane is delivered to a lessee. Scholl spent more than an hour, not inspecting the crane but actually operating it with the deliberate goal of recreating one suspected malfunction, and the crane worked as intended. Thus, while we assume ALL had a duty to inspect the travel detent before delivery and that a jury could find a breach of that duty, we do not think a jury could reasonably find that ALL breached the duty by failing to engage in the sort of prolonged efforts Scholl needed to replicate the intermittent failure after the accident.

B. *Proximate Cause*

Accordingly, we agree with the district court that even if defendant ALL breached its duty by failing to inspect the travel detent mechanism at all before delivery, Carson failed to offer evidence that would allow a reasonable jury to find that ALL's alleged breach was a proximate cause of his injury. White Construction had the crane for roughly three months before it malfunctioned. Dowell testified at his deposition that the travel detent "worked every time" he used it up until the day of the accident. If defendant ALL had inspected the travel detent mechanism upon delivery of the crane, what would an inspection have found?

Carson argues that Dowell's testimony provided no information about how often the travel detent was used before the day of the accident, but indicated only that the travel detent worked every time it was used—however many times that might have been. Carson freely admits, indeed is adamant, that the record contains "no evidence of how often the cruise control function was used" before the accident. He

contends this admission should defeat summary judgment, but we think the opposite is correct.

Assuming there was a breach of duty, how often the travel detent was used before the day of the accident is a critical fact. On plaintiff's theory of breach, a reasonable inspection when the crane was delivered would have included engaging the travel detent and observing its performance, as Scholl did in his post-accident examination. But if the travel detent was used—engaged and observed—100 times between delivery and accident and did not malfunction, it would not be reasonable to infer that testing the travel detent upon delivery would have revealed a defect. If the travel detent was used only once before the day of the accident, on the other hand, the inference that Carson would ask a jury to draw would become stronger.

But the critical fact on which a jury would base that inference—how often the travel detent was used before the day of the accident—is something the jury would have no way to determine based on the record evidence. Nothing in the record speaks to that question, as Carson freely admits. Carson is entitled to have all reasonable inferences drawn in his favor, of course, for he was the non-moving party on this issue at summary judgment. On this record, however, any inferences about how often the travel detent was used before the day of the accident would be "inferences relying on mere speculation or conjecture," and Carson is not entitled to those. See *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

In this respect, this case is similar to several others where critical evidence of causation was lacking. In one such case, *Foster v. New York Central System*, 402 F.2d 312, 313 (7th Cir.

1968), for example, the plaintiff was thrown from his motor-cycle. The accident caused him retrograde amnesia; he could remember nothing about it. There were no eyewitnesses to the accident. The only evidence of causation the plaintiff offered was that a railroad track near where he and his motorcycle were found was improperly graded. Plaintiff sued the owner of the railroad track.

We affirmed the grant of summary judgment for the owner of the track because the record evidence of causation could lead to "several equally speculative conclusions." *Id. Foster* was a diversity case decided under Indiana law, and we quoted the still-relevant words of a then-recent Indiana state court decision: "It is well settled that a decision or finding must be based upon the proven facts and cannot be based upon mere guess, conjecture, surmise, possibility or speculation." *Id.*, quoting *Halkias v. Gary National Bank*, 234 N.E.2d 652, 655 (Ind. App. 1968); see also *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 294 (7th Cir. 1996) (affirming summary judgment for defendant under Indiana law; plaintiff slipped on an unknown object, and without evidence of causation could not establish a *prima facie* case of negligence); *Harris v. Owens-Corning Fiberglas Corp.*, 102 F.3d 1429, 1433 (7th Cir. 1996) ("When, at best, the possibilities are evenly balanced, the court should enter judgment for the defendant on the ground that causation cannot be proved.").

Under Indiana substantive law, the defendant in a negligence action is entitled to judgment as a matter of law when "there is a total absence of evidence or reasonable inferences on at least one essential element of the plaintiff's case." *Palace Bar, Inc. v. Fearnot*, 381 N.E.2d 858, 861 (Ind. 1978). Proximate cause is an essential element of a negligence action, and

Carson has no evidence permitting a reasonable inference in his favor as to that element. ALL was entitled to summary judgment under Federal Rule of Civil Procedure 56(a).

Carson's counsel told us in oral argument that "Indiana is not a summary judgment state." Whatever differences there might be between federal and Indiana summary judgment standards in theory or in practice, they do not matter here. "Federal courts may grant summary judgment under Rule 56 on concluding that no reasonable jury could return a verdict for the party opposing the motion, even if the state would require the judge to submit an identical case to the jury." *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir. 1990).

The district court's judgment is AFFIRMED.