In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2393

MATTHEW SCHAEFER, *et al.*,

*Plaintiffs-Appellants*,

*v.*

UNIVERSAL SCAFFOLDING & EQUIPMENT, LLC,
*et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 10-cv-791 — **Philip M. Frazier**, *Magistrate Judge.*

ARGUED JANUARY 14, 2016 — DECIDED OCTOBER 7, 2016

Before FLAUM and RIPPLE, *Circuit Judges*, and PETERSON, *District Judge.**

PETERSON, *District Judge*. This diversity case requires us to review the district court's application of Illinois tort law, particularly concerning spoliation of evidence. Matthew Schaefer, a construction worker, alleges that he was seriously

* Of the Western District of Wisconsin, sitting by designation.

injured when a defective piece of scaffolding fell and struck him on the head. So, in addition to bringing a workers' compensation claim against his employer, Schaefer sued the scaffolding manufacturer, Universal Scaffolding & Equipment, LLC. When he learned that the piece of scaffolding that hit him had been lost, he added claims for negligent spoliation of evidence against his employer, Brand Energy Services, LLC, and against Dynegy Midwest Generation, LLC, the company that had engaged Brand to build scaffolding at a Dynegy power plant. Schaefer also alleged claims for construction negligence and failure to warn against Dynegy. Schaefer's wife joined his claims for negligent spoliation and brought claims for loss of consortium against each of the defendants.

In a series of decisions, the district court granted summary judgment for defendants. At the heart of the case is the missing piece of scaffolding, which had been lost while in Dynegy's possession, before anyone had tested it for defects. The district court held that without the missing piece, Schaefer could not prove his product liability claims against Universal. The district court also held that Dynegy was not liable for any defects or negligence in the construction of the scaffolding. We affirm these decisions.

But the district court also held that Schaefer and his wife could not prove their spoliation claims either, reasoning that because the Schaefers were unable to prove that the missing piece was in fact defective, they would be unable to prove that the loss of the piece caused them any damage. The district court here relied on an incorrect statement of Illinois spoliation law, which does not require a plaintiff to prove that he would have won his case but for the spoliation. A

spoliation claim under Illinois law requires only that the plaintiff show a "reasonable probability" of success on the underlying suit. Because the Schaefers adduced evidence from which a jury could make this finding—the batch of scaffolding used on the Dynegy project had a large number of defective pieces—the grant of summary judgment on the spoliation claims was improper. Accordingly, we reverse the grant of summary judgment on the spoliation claims against Brand and Dynegy.

## I. Background

Matthew Schaefer was an employee of Brand Energy Services, LLC, which had been engaged by Dynegy Midwest Generation, LLC, to erect scaffolding at a Dynegy power plant. Under its contract with Dynegy, Brand had complete and authoritative control over the scaffold construction. Ryan Wampler was Brand's project manager. Dynegy also had a safety manager at the power plant, Don Watson. Brand acquired the scaffold components from Universal Scaffolding & Equipment, LLC, but Dynegy paid for the scaffolding and owned it.

The Universal scaffolding used a "cup-lock" system in which metal tabs on the horizontal bars, called "ears," would fit into a cup attached to the vertical members. A second cup would be locked down onto the ears to hold the components in place. Brand workers had difficulties with the Universal scaffolding components because some of the bars were not the proper length and some had bent ears, and those faulty components would not readily lock into the cups. Eventually the problem became prevalent enough that Wampler had his crew inspect the new Universal components as they arrived and then mark and set aside the defective pieces.

At the time of Schaefer's accident, November 2008, Schaefer and other Brand employees, including Maynard Hudson, were assembling scaffolding. Schaefer was a level below Hudson. A laborer would hand Schaefer a piece of scaffolding, and Schaefer would hand it up to Hudson, who would assemble the pieces. Hudson placed a three-foot, six-inch horizontal bar in the cups; but when he placed the next bar, the three-foot, six-inch bar popped out of its cups, fell, and struck Schaefer on the head. Schaefer suffered serious injuries to his neck, back, shoulders, and arms.

Precisely what caused the bar to fall is sharply disputed. Neither Schaefer nor Hudson noticed any defects in the bars, although during the assembly process they did not have time to look carefully. Wampler investigated the accident, and he reported that Hudson had knocked the bar with his hip or tool bag; but Hudson denies this. Schaefer contends that the root cause was Universal's defective scaffolding, but proving that theory is problematic because of what happened to the bar.

Immediately after Schaefer's accident, Watson (Dynegy's safety manager) asked Wampler to retrieve the bar that struck Schaefer. Watson stored the bar in his office at the power plant. When he moved offices in December 2009, he left the bar behind, and it was eventually moved to a storage room in the power plant. The last time that anyone saw the bar was in September or October of 2010, when a safety worker saw it in the storage room. By November 2011, the first time that Schaefer sought to examine the bar as part of discovery in this case, it had been lost.

Schaefer filed a workers' compensation claim in March 2009. He filed a discovery action against Brand in Illinois

state court in December 2009. Brand never responded to the suit or to Schaefer's interrogatories asking who had sold Brand the scaffolding used at the construction site and what the company had done with the scaffolding after finishing the project. Schaefer did not press the discovery action.

In June 2010, Schaefer and his wife, Cynthia, filed a complaint against Universal in state court, bringing claims for negligence, strict liability for product defect, strict liability for failure to warn, and loss of consortium. (Both Matthew and Cynthia Schaefer are plaintiffs and appellants, but for simplicity, we will refer to them collectively as "the Schaefers," and we will refer to Matthew as "Schaefer.") Universal removed the case to federal court on the basis of diversity. Two amended complaints later, Schaefer had six causes of action under Illinois law: three against Universal for negligence (product liability), strict liability for product defect, and strict liability for failure to warn; two against Dynegy for negligence and negligent spoliation; and one against Brand for negligent spoliation. Schaefer's wife also brought three claims of her own: one against Dynegy for negligent spoliation; one against Brand for negligent spoliation; and one against all defendants for loss of consortium.

The district court granted summary judgment to defendants on all claims in a series of decisions issued over the course of two years. In June 2013, a now-retired district judge denied Brand's motion for summary judgment on the spoliation claim against it. In February 2014, the district judge who took over the case denied cross-motions from the Schaefers and from Brand and Dynegy for summary judgment on the spoliation claims, but he granted Universal's motion for summary judgment on all claims against it.

The parties then consented to have a magistrate judge preside over the remainder of the case (i.e., the claims against Dynegy and Brand). In January 2015, the magistrate judge granted Dynegy's motion for summary judgment on Schaefer's negligence claim against it. A month later, as the case neared trial on the remaining claims for spoliation and loss of consortium, the magistrate judge granted Brand and Dynegy's joint motion in limine to exclude all evidence and testimony that the missing scaffolding bar was defective. At the magistrate judge's invitation, Brand and Dynegy renewed their motions for summary judgment on the spoliation and loss of consortium claims. The magistrate judge granted Brand and Dynegy's renewed motion and the case was over. This appeal followed.

## II. Discussion

The Schaefers contend that the district court erred in entering summary judgment on each of their claims. We review the district court's grant of summary judgment de novo, examining the record in the light most favorable to the Schaefers. *Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 995 (7th Cir. 2016). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.

### A. Product liability and negligence claims

We begin with Schaefer's product liability claims against Universal. Relying on *Shramek v. General Motors Corp., Chevrolet Motor Division*, 69 Ill. App. 2d 72, 216 N.E.2d 244 (1966), and its progeny, the district court concluded that product liability claims fail under Illinois law when the plaintiff does

not present the allegedly defective product itself, or at least other admissible evidence that the product was defective. On appeal, Schaefer contends that the district court erred in concluding that he lacked evidence that the bar was defective. We disagree.

Under Illinois law, plaintiffs in product liability actions "must identify the manufacturer of the product and demonstrate a causal relationship between the injury and the manufacturer's product." *Tragarz v. Keene Corp.*, 980 F.2d 411, 418 (7th Cir. 1992) (citing *Zimmer v. Celotex Corp.*, 192 Ill. App. 3d 1088, 1091, 549 N.E.2d 881, 883 (1989)). As part of proving a causal relationship, Schaefer must adduce evidence that the bar was, in fact, defective. This evidence can be direct or circumstantial, but Schaefer must establish that a defect in the scaffolding caused the accident. *Shramek*, 216 N.E.2d at 247; *see also Sanchez v. Firestone Tire & Rubber Co.*, 237 Ill. App. 3d 872, 874, 604 N.E.2d 948, 950 (1992) ("Proper circumstantial evidence includes either proof that tends to exclude other extrinsic causes or expert testimony that the product was defective."). The mere fact that an accident occurred does not establish causation. *Shramek*, 216 N.E.2d at 247.

Schaefer relies on deposition testimony from four witnesses, arguing that this testimony creates a genuine dispute of material fact as to whether the bar was defective. But these witnesses merely confirm that workers at the construction site had identified some defective scaffolding pieces. The record does not establish that every piece of scaffolding at the jobsite was defective, and there is no evidence in the record that the specific bar that caused Schaefer's injury was defective. And one of Schaefer's own experts, Geno Maniago, conceded at his deposition that even if that specific bar

had been defective, the bar could have been damaged at the work site, which would mean that the defect was not attributable to Universal.

Without the bar itself, which was lost before it was analyzed, Schaefer cannot prove that Universal's defective product caused his injuries, and thus he cannot succeed on his product liability claims against Universal. At most, he has adduced expert opinions that the bar that hit him *might* have been one of the defective ones. But this is not enough to get the case to a jury. *See Sanchez*, 604 N.E.2d at 950 ("[L]iability in a products liability action cannot be based on mere speculation, guess, or conjecture, and the circumstances shown must justify an inference of probability as distinguished from mere possibility."); *Phillips v. U.S. Waco Corp.*, 163 Ill. App. 3d 410, 419, 516 N.E.2d 670, 675 (1987) ("Without an examination of the scaffold itself to determine if the collapse was a result of a preexisting defect, Phillips could never prove, directly or inferentially, a claim based in negligence or strict liability."). The district court properly granted summary judgment to Universal on Schaefer's product liability claims. And, consequently, Cynthia Schaefer's loss of consortium claim against Universal necessarily fails, and the district court properly granted summary judgment on that claim, too.[1]

---

[1] Under Illinois law, "actions for personal injuries and actions for loss of consortium … are legally distinct." *Mitchell v. White Motor Co.*, 58 Ill. 2d 159, 163, 317 N.E.2d 505, 507 (1974). But when a defendant is not liable for the underlying claim, it is appropriate to dismiss attached claims for loss of consortium. *See, e.g.*, *Fluker v. County of Kankakee*, 945 F. Supp. 2d 972, 994 (C.D. Ill.), *aff'd*, 741 F.3d 787 (7th Cir. 2013).

This leaves Schaefer's negligence claim against Dynegy. As a general rule of Illinois law, a party who hires an independent contractor is not liable for the acts of the independent contractor. *Wilfong v. L.J. Dodd Const.*, 401 Ill. App. 3d 1044, 1060, 930 N.E.2d 511, 526 (2010). Dynegy hired Brand to build the scaffolding, so if the general rule applies, Dynegy is not liable for the defective construction. On appeal, Schaefer gives three reasons (the same reasons he gave to the district court) why the general rule should not apply. We are not persuaded.

Schaefer relies first on the "retained control" exception to the general rule, as articulated in § 414 of the Restatement (Second) of Torts, which Illinois has adopted. Section 414 provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1965). Schaefer contends that Dynegy retained enough control over Brand's work that Dynegy owed him a duty to exercise reasonable care over the scaffolding project.

Schaefer argues that Dynegy exercised control through Watson, Dynegy's on-site safety director at the power plant. According to Schaefer, Watson "would walk around the job site, talk to workers and try to correct unsafe things." Appellants' Brief, at 35. Watson's authority, according to Schaefer,

was conferred through the Master Services Agreement (MSA), under which "Dynegy reserve[d] the right to inspect and deny access or use of any equipment or substance brought on site." *Id.* at 9 (citing Dkt. 197-6).[2] The MSA also required Brand to participate in Dynegy's safety program.

But Watson's work and Dynegy's safety program establish only that Dynegy had a right to inspect and to require general safety. The comments to § 414 make clear that retaining these general rights do not give rise to liability under the retained control exception. As comment C provides:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Restatement (Second) of Torts § 414, Comment C.

---

[2] All docket citations refer to the district court docket.

Schaefer contends that Watson's activities are comparable to those that were sufficient to show "retained control" in *Bokodi v. Foster Wheeler Robbins, Inc.*, 312 Ill. App. 3d 1051, 728 N.E.2d 726 (2000). But in *Bokodi*, "defendants' actions indicated a substantial level of involvement in the incidental activities at the work site." 728 N.E.2d at 735. Watson's safety inspection activities, which extended to the entire plant and not just to the scaffolding project, did not get him involved in incidental activities of the scaffold construction. The contract between Dynegy and Brand expressly gave Brand control:

> Contractor is, and shall continue to be, an independent contractor, and any provisions of this Agreement or any Purchase Order which may appear to give Dynegy the right to direct Contractor as to details of performing any Services, or to exercise a measure of control over Contractor's performance of the Services, shall be interpreted to mean that Contractor will follow the instructions of Dynegy with respect to the results of the Services achieved only and not in the means whereby the Services are to be accomplished. *Contractor shall have complete and authoritative control as to the details of performing the Services.*

Dkt. 197-6, at 12 (MSA, § A.23) (emphasis added). Other sections of the contract gave Dynegy the right to inspect Brand's work and to halt work when unsafe, but the contract did not give Dynegy control over operational details of the scaffold construction. Without control over operational details, the right of inspection and the authority to stop work is

insufficient to establish "retained control" under § 414 of the Restatement. *Moiseyev v. Rot's Bldg. & Dev. Inc.*, 369 Ill. App. 3d 338, 351, 860 N.E.2d 1128, 1139 (2006). And when, as in this case, the evidence establishes only the right to inspect, to halt work, and to make safety suggestions, the question is decidable as a matter of law. *Id*. at 1139–40.

Second, Schaefer contends that Dynegy, as the landowner, is liable for unsafe conditions on its premises. But Schaefer devotes only a scant paragraph to the issue. He cites no authority and simply asserts that the ill-fitting scaffolding components constitute a condition of the land. Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority. *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006).

But Schaefer's argument would fail even if not waived. Illinois courts have adopted §§ 343 and 343A of the Restatement (Second) of Torts for purposes of evaluating premises liability claims. *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1015 (7th Cir. 2000), *as amended on denial of reh'g and reh'g en banc*, (June 1, 2000) (citing *Genaust v. Ill. Power Co.*, 62 Ill. 2d 456, 468, 343 N.E.2d 465, 472 (1976)). These provisions impose liability on landowners, under certain circumstances, for harm caused "by a condition on the land." Restatement (Second) of Torts § 343. But not everything located on a landowner's property is a "condition on the land." *See, e.g.*, *Gregory v. Beazer E.*, 384 Ill. App. 3d 178, 191, 892 N.E.2d 563, 577 (2008) (asbestos blankets and gloves were not conditions on the land); *Quinton v. Kuffer*, 221 Ill. App. 3d 466, 472, 582 N.E.2d 296, 300 (1991) (a flammable 55-gallon drum that exploded was not a condition on the land). Schaefer was not injured by already-assembled scaffolding, which could ar-

guably be a condition on the land. He alleges that he was injured as a result of an activity taking place on the Dynegy property, one that involved a defective piece of equipment. The cause of Schaefer's injury is unlike those things that constitute conditions on the land, so premises liability is a poor fit for Schaefer's negligence claim against Dynegy.

Schaefer's third basis for holding Dynegy liable is a "failure to warn" theory. The Illinois Supreme Court has applied § 388 of the Restatement (Second) of Torts to failure to warn claims. *See Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 348, 662 N.E.2d 397, 409 (1996). Under § 388, in certain circumstances, one who provides chattel for another to use has a duty to warn of known defects in the chattel. Schaefer contends that Dynegy should have warned him about the defective scaffolding. The district court held that Schaefer could not proceed under this theory of negligence because he had failed to adduce evidence of any unequal knowledge between Schaefer and Dynegy. The district court was correct.

Under Illinois law, "[a] duty to warn exists where there is unequal knowledge, actual or constructive of a dangerous condition, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur if no warning is given." *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186, 766 N.E.2d 1118, 1123 (2002) (citations, internal quotation marks, and alterations omitted). Schaefer's knowledge of the defective scaffolding was undisputedly equal to, and likely much greater than, Dynegy's knowledge. By the time of the accident, Brand workers had already had several problems with the scaffolding. Brand's project supervisor Wampler (Schaefer's boss) had directed Brand workers to go through new shipments of scaffolding, mark

the bad pieces, and set them aside. Wampler had also talked to his crews about the bad scaffolding. Schaefer himself testified that he had noticed problems with the scaffolding on the jobsite. As for the specific bar that struck him, Schaefer handled it when he passed it up to Hudson to put it into place. Because Schaefer had at least as much knowledge as Dynegy had about the bar's defects, Schaefer's failure to warn theory necessarily fails.[3] And with that, Schaefer's negligence claim against Dynegy is doomed, along with his wife's related loss of consortium claim.

In sum, based on undisputed facts of the record, the district court properly granted summary judgment on Schaefer's product liability claims against Universal and his negligence claim against Dynegy.

## B.  Spoliation claims

The Illinois Supreme Court recognized a cause of action for negligent spoliation of evidence in *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 193, 652 N.E.2d 267, 270 (1995), *as modified on denial of reh'g*, (June 22, 1995). In that case, the plaintiff, Boyd, was injured in an explosion that he alleged was caused by a defective propane heater. Insurance company employees took the heater for testing to determine the cause of the explosion, but the heater was lost while in the insurance company's possession, before it had been tested for defects. Boyd brought spoliation claims against the in-

---

[3] It bears mentioning that Schaefer's arguments in support of his negligence claim against Dynegy generally presume that the bar was defective. But without the bar, he cannot prove that it was defective, so his negligence claim against Dynegy would fail for the same reason that his product liability claims against Universal fail.

surance company, which the insurance company moved to dismiss. The case was certified to the Illinois Supreme Court, which held for the first time that Illinois recognizes a claim for negligent spoliation, and that Boyd had stated such a claim, even though he would not be able to prove that the heater was actually defective. *Boyd*, 652 N.E.2d at 272.

Under *Boyd*, spoliation is not a separate, new tort, but a species of negligence. Accordingly, a negligent spoliation claim requires the plaintiff to prove the traditional four elements of negligence: a duty to preserve the evidence; breach of that duty by loss of the evidence; that the loss proximately caused the plaintiff's inability to prove his underlying claim; and actual damages as a result. *Id.* at 270; *see also Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 26, 979 N.E.2d 22, 27.

In this case, the district court twice denied motions for summary judgment on the Schaefers' spoliation claims. A-8–16. The district court held that both Brand and Dynegy had a duty to preserve the scaffolding piece, but that questions of fact about the other elements precluded summary judgment for either side. As trial approached, Brand and Dynegy filed a joint motion in limine to exclude any evidence or argument that the scaffolding was defective. Dkt. 220. The motion prompted the district court (now with Magistrate Judge Frazier presiding) to revisit the proximate cause issue. The district court granted the motion in limine, reasoning that without the missing scaffolding piece, the Schaefers could never prove by a preponderance of the evidence that the loss of the bar caused them to lose their underlying claims. With that evidentiary ruling made, the Schaefers' spoliation claims were doomed. The court invited Brand and Dynegy to re-

new their motions for summary judgment and granted them.

On appeal, the Schaefers contend that the district court applied the wrong legal standard to their spoliation claims, which led the court to incorrectly grant the motion in limine. The Schaefers contend that they had adduced admissible evidence that the bar was defective, and thus they should have been allowed to proceed to trial on their negligent spoliation claims. Brand and Dynegy disagree, and they contend that the district court also erred in its earlier decisions that they had a duty to preserve the bar. We may affirm a district court's grant of summary judgment based on any ground that the record supports, so long as the non-moving party had the opportunity to contest the issue. *Gerhartz v. Richert*, 779 F.3d 682, 685 (7th Cir.), *cert. denied*, 136 S. Ct. 319 (2015). Accordingly, we consider both issues, duty and causation.

### 1. Duty

Illinois law imposes no general duty to preserve evidence, but a duty arises if two conditions are satisfied. First, a "relationship" condition: the duty must "arise[] by agreement, contract, statute, special circumstance, or voluntary undertaking." *Dardeen v. Kuehling*, 213 Ill. 2d 329, 336, 821 N.E.2d 227, 231 (2004). Second, a "foreseeability" condition: the duty to preserve must "extend[] to the evidence at issue—*i.e.*, whether a reasonable person should have foreseen that the evidence was material to a potential civil action." *Id.* A plaintiff must satisfy both the relationship condition and the foreseeability condition to prove that a duty to preserve evidence existed. *Id.*

The foreseeability condition is straightforward here: both Brand and Dynegy knew that the bar was involved in a serious workplace injury, which is why Dynegy's Watson sought to preserve it in the first place. Dynegy contends that the foreseeability condition had "expired," so to speak, by the time Dynegy lost the bar in October 2010, because Schaefer had not asked Dynegy for the bar by then, and no one in Dynegy's position would think that the bar mattered anymore. But that is merely conclusory. We agree with the district court that Dynegy, having collected the bar because of its role in a workplace accident, could not simply assume after less than two years that the bar was no longer pertinent to a personal injury claim.

The relationship condition is more complex. As one district court in this circuit has recently observed, "Illinois courts have not precisely defined what constitutes a 'special circumstance,' but 'something more than possession and control are required, such as a request by the plaintiff to preserve the evidence and/or the defendant's segregation of the evidence for the plaintiff[']s benefit.'" *Hart v. Amazon.com, Inc.*, No. 15-cv-1217, 2015 WL 8489973, at *6 (N.D. Ill. Dec. 8, 2015) (quoting *Martin*, 979 N.E.2d at 31). It would be an understatement to say that this area of Illinois law is not governed by bright-line rules. But *Martin* makes clear that mere possession of the evidence is not enough to impose a duty. 979 N.E.2d at 31–32. Nor is being the plaintiff's employer, or being a potential litigant. *Id*. But a request by a plaintiff to preserve the evidence, or a defendant's segregation of the evidence for the plaintiff, are recognized as special circumstances. *Id*.

For Brand, those special circumstances are present, although in a factually complicated way. Brand did not take long-term possession of the bar. But after the accident, Wampler, Brand's project supervisor, collected the bar and delivered it to Watson, Dynegy's safety supervisor, for safekeeping because of its role in Schaefer's accident. Schaefer filed a discovery action against Brand in December 2009. His discovery requests did not ask Brand to produce the bar itself, but Schaefer was plainly seeking information about the bar, which at the time Brand knew was in Dynegy's possession. Brand contends now that Schaefer's discovery complaint was legally unsound, and that Brand was entitled to ignore it. Maybe so, but the potential infirmities of the discovery action are beside the point. What matters is that a little more than a year after Schaefer's accident, Brand knew that Schaefer was looking to Brand for information about the allegedly defective bar, which Brand had collected and delivered to Dynegy to preserve. These facts bring the case close to *Miller v. Gupta*, 174 Ill. 2d 120, 129, 672 N.E.2d 1229, 1233 (1996), where analogous special circumstances satisfied the relationship prong. In *Miller*, the plaintiff's attorney requested X-rays from the plaintiff's doctor, and the doctor collected them. But the cleaning staff inadvertently tossed them out before copies were provided to plaintiff's attorney. The district court here was right: having collected the bar, and knowing that Schaefer was looking for it, Brand had a duty to preserve it.

We reach the same conclusion with regard to Dynegy because Dynegy voluntarily assumed a duty to preserve the bar. "A voluntary undertaking requires a showing of affirmative conduct by the defendant evincing defendant's intent to voluntarily assume a duty to preserve evidence." *Martin*,

979 N.E.2d at 28. Dynegy knew that Schaefer had been injured when the bar fell on him, and Watson asked a Brand employee to retrieve the bar so that Watson could store it in his office so that "there wasn't any issue later." And Watson recognized the potential importance of the bar to Schaefer's case: sometime after the accident, Watson went to the internet to find out how much the bar weighed and what amount of force it had when it fell and struck Schaefer. Dynegy took affirmative steps to take possession of the bar, and to save it for potential litigation. Thus, Dynegy's voluntary undertaking satisfies the relationship condition of the duty analysis.

### 2. Causation

We turn now to whether the district court applied the correct standard for causation, and whether under the correct standard, the Schaefers had raised a genuine issue of fact regarding whether the loss of the bar was the proximate cause of Schaefer's inability to prove his underlying negligence claims.

Causation in a spoliation case is a subtle concept. Under the principles set out in *Boyd*, the spoliation plaintiff has to prove that the loss of the evidence would cause him to lose the underlying case. 652 N.E.2d at 271. This showing prevents a spoliation claim from succeeding on the loss of some inconsequential evidence. But, as explained in a critical footnote in *Boyd*, the spoliation plaintiff does *not* have to prove that he would have actually won his case with the missing piece:

> A plaintiff need not show that, but for the loss or destruction of the evidence, the plaintiff would have prevailed in the underlying action.

> This is too difficult a burden, as it may be impossible to know what the missing evidence would have shown.

*Id.* at 271 n.2. If the spoliation plaintiff had to prove that he would have won the underlying suit if he had the missing evidence, he would be in a hopeless Catch-22: if he could prove that he would have won the underlying case even without the lost evidence, then he could not show that the loss of that evidence actually harmed him. In other words, it would be impossible for the spoliation plaintiff to show both that without the lost evidence he would necessarily lose the underlying case, and that with it, he would win.

So, to prevail on their spoliation claims, the Schaefers must make two showings. First, they must show that the loss of the scaffolding piece would cause them to lose their underlying suit. *Id.* And second, they must show that if they had the scaffolding piece, they would have a "reasonable probability" of winning. *Id.* But "reasonable probability" is less than proof of success by a preponderance of the evidence, because that is the standard required to show that they would have won the underlying suit.

*Boyd* makes clear that the burden is on the Schaefers to make these showings; there is no evidentiary presumption that negligently lost evidence is favorable to the plaintiff. *Id.* at 273. Although the burden is on the plaintiff, if a defendant shows that the plaintiff could not win the underlying suit even with the lost evidence, then the spoliation claim necessarily fails. *Id.* at 271 n.2. Causation in a negligence case is generally question for the trier of fact, unless there is no material dispute or only one conclusion is clearly evident. *Wil-*

*liams v. Univ. of Chi. Hosps.*, 179 Ill. 2d 80, 88, 688 N.E.2d 130, 134 (1997).

The magistrate judge in this case held the Schaefers to the wrong standard. The magistrate judge correctly acknowledged that to succeed on the spoliation claims, *Boyd* "would require plaintiff to show a reasonable probability of success" on the underlying negligence claims. A-42. But the magistrate judge conflated reasonable probability of success with proof by a preponderance of the evidence:

> And plaintiff must prove a reasonable probability of success on the merits. Now I have a hard time distinguishing in my mind any qualitative difference between reasonable probability of success on the merits and the ability to show a preponderance of the evidence. Both mean more likely than not.

A-40. The magistrate judge also incorrectly paraphrased the holding in *Boyd*: "Or I think another way that it was put in *Boyd* is that, but for the loss of the scaffolding they would have been able to succeed on their claims." A-42. This contradicts the actual holding in *Boyd*, which is that a spoliation plaintiff need *not* prove that he would have succeeded on the underlying claim but for the loss of the evidence.

Applying the proper standard, and viewing the record in the light most favorable to the Schaefers (as we must on the defense motions for summary judgment), the Schaefers have adduced sufficient evidence to put the issue of causation into genuine dispute. There was a pervasive problem with the scaffolding at the Dynegy jobsite, and workers were having ongoing problems with the horizontal bars popping out of

cups. The problem got so bad that Brand's project supervisor had workers go through each new shipment of scaffolding and set aside the bad pieces. No one has provided testimony that the bar that hit Schaefer was actually defective. Several employees testified that they did not notice any defects in the bar that fell on Schaefer, but there is ample testimony that the defects would not be readily apparent after only a quick glance, which is all that Schaefer and his colleagues had time for while assembling the scaffolding. Hudson, the employee who installed the bars involved in the accident, testified that he did not bump any of them, despite Wampler's report. If the jury were to believe Hudson, a reasonable jury could eliminate his negligence as a cause of the accident. It may be impossible for Schaefer to prove his negligence case without the missing evidence, but the finger of suspicion points distinctly toward the missing bar, just as it pointed to the missing propane heater in *Boyd*. If Schaefer's experts had had the opportunity to test the missing piece, they might have been able to confirm that the piece had defects that had gone unnoticed by the lay witnesses at the jobsite. But the loss of the piece deprived Schaefer of the opportunity to develop this important proof.

We conclude that the Schaefers have raised a genuine issue of fact as to whether, with the missing scaffolding, they would have had a reasonable probability of success on their underlying claims. The district court's grant of summary judgment on this issue is reversed.

### 3. Motion in limine

Our ruling necessarily means that the district court also erred in granting the joint motion in limine No. 21, which excluded all evidence that the missing piece was defective.

We review rulings on motions in limine for abuse of discretion; decisions about admitting and excluding evidence "are peculiarly within the competence of the district court." *Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009) (citations and internal quotation marks omitted). But we will overturn the district court's ruling if it is based on the wrong legal standard. *See Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) ("[T]he district court's decision [on a motion in limine] is to be overturned only if no reasonable person would agree with the trial court's ruling.").

The district court's ruling on motion in limine No. 21 was based on the notion that any evidence that the missing scaffolding was defective would be necessarily speculative. The district court's reason for excluding Schaefer's experts was that they could not reliably testify that the missing scaffolding actually had any of the defects that had been common in the Universal scaffolding at the work site:

> I'm not going to allow Maniago or Unger to offer any opinion as to any defect that existed or that the defect may have caused the accident to happen, the incident to happen for the simple reason that, by their own admission and just by the application of just common sense, is that, that is just purely speculation on their part.

A-45. Both Maniago and Unger conceded that without the opportunity to test the lost scaffolding piece they could not say whether it was defective. But that is part of the showing that the Schaefers had to make to support their spoliation claims. They offered Maniago and Unger to help explain how the scaffolding worked, and to offer explanations of how the alleged defects in the scaffolding could have caused

the bar to fall and thereby cause Schaefer's injuries. Maniago's and Unger's testimony could have been admitted for these purposes, even if they could not testify whether the missing bar was actually defective. And the prevalence of defects among the Universal scaffolding pieces at the worksite certainly makes it more likely that the piece that hit Schaefer was defective. The district court's grant of motion in limine No. 21, excluding all evidence that the missing scaffolding was defective, was in error because it evaluated the relevance of their testimony under the wrong legal standard applicable to spoliation claims.

This is not to say that Maniago's and Unger's testimony must be admitted. On remand, the parties may revisit their qualifications and the reliability of their testimony. But the district court must evaluate these issues under the correct standard for evaluating a negligent spoliation claim under Illinois law.

### III. Conclusion

For the foregoing reasons, we AFFIRM the entry of summary judgment on all claims against Universal, and the entry of summary judgment on Schaefer's negligence claim and Cynthia Schaefer's related loss of consortium claim against Dynegy. We REVERSE the grant of summary judgment on the Schaefers' spoliation claims against Dynegy and Brand. We REMAND for further proceedings consistent with this opinion.